UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK E. WALKER (#550507)** | **CIVIL ACTION** |
| **VERSUS** | |
| **JAMES LeBLANC, ET AL.** | **NO. 13-0553-JJB-RLB** |

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on June 5, 2014.

                                    **RICHARD L. BOURGEOIS, JR.**
                                    **UNITED STATES MAGISTRATE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


MARK E. WALKER (#550507)                                      CIVIL ACTION

VERSUS

JAMES LeBLANC, ET AL.                                         NO. 13-0553-JJB-RLB


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss of defendants James LeBlanc and Trish Foster (Rec. Doc. 8). This Motion is opposed.

The *pro se* plaintiff, an inmate currently incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, against Secretary James LeBlanc, LSP Legal Programs Director Trish Foster, and unidentified "John Doe" and "Jane Doe" prison officials previously employed at the Phelps Correctional Center ("PCC") in DeQuincy, Louisiana, complaining that the defendants have violated his constitutional rights through deliberate indifference to his serious medical needs, specifically through a failure to provide him with tinted eyeglasses which he allegedly needs because of a congenital eye condition, and that they have failed to respond appropriately to complaints and administrative grievances which he has submitted in connection with this claim. Pursuant to an Amended Complaint, the plaintiff has provided the identities of certain of the "John Doe" and "Jane Doe" defendants employed at PCC

and has added a claim against an additional LSP official, Grievance Officer Stephanie Lamartiniere.[1]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a

---

1. The newly identified defendants have not yet been served and so have neither appeared in this proceeding nor participated in the instant motions.

*pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).[2]

In his Complaint, as amended, the plaintiff alleges that he arrived at Phelps Correctional Center in April, 2012, and advised prison medical officers at that time that he suffers with a severe congenital eye condition and is required to have appropriate eye-wear. On or about June 12, 2012, the plaintiff was provided with a consultation with an eye doctor who prescribed tinted eyeglasses for the plaintiff and noted that such eye-wear was medically necessary for the plaintiff's condition. The plaintiff complains, however, that prison officials thereafter improperly changed the referenced prescription and failed to provide him with tinted eye-wear, purportedly because "Phelps policy did not allow for inmates to have tinted glasses." The plaintiff asserts, however, that tinted eye-wear was available for purchase from the Phelps commissary. The plaintiff further alleges that prison security officers assigned him to perform work in violation of his medical duty status and that, as a result, he was exposed to excessive sunlight and suffered permanent additional damage to his left eye resulting from the defendants' behavior. Finally, on or about September 12, 2012, the plaintiff filed an administrative

---

2. In determining whether to grant a motion to dismiss, a district court generally considers only the allegations of the well-pleaded Complaint, as amended, and does not consider documentation "outside the complaint." *Scanlan v. Tex. A&M University*, 343 F.3d 533, 536 (5th Cir. 2003). When ruling on a motion to dismiss in a case filed by a *pro se* plaintiff, however, a district court may consider documents attached to the plaintiff's Complaint and those materials subsequently filed. *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). *See also Clark v. Huntleigh Corp.*, 119 Fed. Appx. 666, 667 (5th Cir. 2005) (finding that because of the plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments").

grievance at PCC, complaining of the foregoing misconduct. According to the plaintiff, however, officials at Phelps did not provide a timely response to his administrative grievance, and when the plaintiff threafter attempted to proceed to the second step of the prison administrative process, by sending a copy of his grievance to the Office of the Secretary of the Louisiana Department of Corrections, the Secretary's Office improperly forwarded his grievance to officials at LSP, to which institution the plaintiff had since been transferred. The plaintiff complains that defendant Trish Foster at LSP then failed to properly handle his administrative grievance and placed it on administrative backlog, to be resolved only after the resolution of a previous grievance filed by the plaintiff. In addition, defendant Foster allegedly refused to provide the plaintiff with a copy of his medical records and with the identities of certain Phelps personnel. Finally, the plaintiff complains that when his grievance was finally addressed in June, 2013, defendant Stephanie Lamartiniere at LSP improperly denied the grievance at the First Step of the administrative process, and defendant James LeBlanc thereafter improperly denied the grievance at the Second Step of the process. According to the plaintiff, he still has not been provided with appropriate tinted eye-wear, notwithstanding that subsequent orders have been issued by physicians at LSP for same, and he seeks injunctive relief compelling prison officials to provide him with the requested eye-wear, as well as compensatory and punitive damages as a result of the defendants' deliberate indifference to his serious medical condition.

In response to the plaintiff's allegations, defendants LeBlanc and Foster assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's federal constitutional or statutory rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398, 399 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's federal constitutional or statutory rights. Second, the district court looks to "whether the defendants' conduct was objectively reasonable in light of 'clearly established' law at the time of the violation." *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999). This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *See Saucier v. Katz, supra*, 533 U.S. at 201.[3]

## Claims Arising Under 42 U.S.C. § 1983

Undertaking the *Saucier* analysis, the Court concludes that the defendants' motion should be granted. Under § 1983, an inmate who seeks to assert a claim regarding inadequate medical care must be able to show that appropriate medical care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation that he believes he should have is not the issue.

---

3. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). Although the *Saucier* methodology will be "often beneficial", the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

*Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing principles, the Court finds that the plaintiff has failed to allege facts which suggest that either defendant James LeBlanc or Trish Foster has exhibited deliberate indifference to his serious medical needs. Specifically, the plaintiff has failed to allege sufficient connexity between the actions of these defendants and the alleged constitutional violations complained of. Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that these defendants are responsible for the

actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676, *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith, supra,* 718 F.2d at 768.

In the instant case, the plaintiff has failed to allege that either defendant LeBlanc or Foster has had any personal involvement in providing the plaintiff with medical care or in determining his duty status or work assignments. As to defendant LeBlanc, all that the plaintiff has alleged is that this defendant exercises supervisory authority over the prisons within the state, that the defendant's Office was the Second Step Respondent in connection with the plaintiff's administrative grievance, and that the defendant was the named addressee on two letters forwarded by the plaintiff, in December, 2012 and August, 2013, respectively, wherein the plaintiff complained to the defendant Secretary regarding his alleged inadequate eye-wear. And with regard to defendant Foster, all that the plaintiff has alleged as to this defendant is that she is in charge of the Legal Programs Department at LSP, that she improperly placed the plaintiff's grievance on administrative backlog, and that she failed to provide the plaintiff with copies of his medical records or the identities of certain prison employees upon request. It is clear that these allegations against both defendants constitute, for the most part, assertions of

mere supervisory and administrative authority on the part of these defendants and that, in the absence of any suggestion that these defendants were personally involved in providing the plaintiff with medical care or in determining his appropriate medical needs, duty status or job assignments, there is no basis for the imposition of liability against them. Further, the plaintiff's assertion that the defendants allegedly mishandled, improperly denied or failed to respond to his administrative grievance or to his informal requests for intervention or for information fails to state a meritorious claim inasmuch as an inmate plaintiff is not constitutionally entitled to an investigation into his administrative claims or informal complaints or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless"). Accordingly, the plaintiff fails to state a cause of action under § 1983 relative to the alleged conduct of defendants LeBlanc and Foster, and these defendants are entitled to judgment as a matter of law in connection with these claims.[4]

## Claims Arising Under The ADA

Turning to the plaintiff's claims arising under the ADA, the Court finds that the plaintiff also fails to state a cause of action relative to the moving defendants under this statute. "The

---

4. The mere assertion in the plaintiff's Complaint that he addressed correspondence to the Secretary's Office on two occasions is not sufficient to establish direct knowledge or participation by this supervisory official in the events alleged. As Secretary of the Louisiana Department of Public Safety and Corrections, defendant LeBlanc is neither medically trained nor tasked with the obligation to intervene in decisions made by medical professionals relative to individual inmates at specific facilities, nor is he present on a regular or daily basis at the plaintiff's facility.

ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "public entity" to include "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1)(B), and it has been held that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'" *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Thus, "the plain text of Title II of the ADA unambiguously extends to state prison inmates." *Id.* at 213. Notwithstanding, punitive damages may not be awarded in private suits brought under the ADA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), and "[a] plaintiff asserting a private cause of action for violation of the ADA ... may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle v. Victoria County, Texas, supra*, 302 F.3d at 574.

In order to establish a violation of the ADA, the plaintiff must be able to demonstrate (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the defendants are responsible or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997). The plaintiff's allegations in the instant case do not meet this 3-part test vis-a-vis defendants LeBlanc and

Foster or vis-a-vis the medical attention that he has received at LSP. Specifically, the plaintiff acknowledges that upon transfer to LSP, he was provided with an appointment with an eye specialist and was again prescribed tinted eye-wear as being medically necessary for his condition. Although he complains that the wrong eye-wear was then ordered for him, he further acknowledges that when the wrong eye-wear was received and was allegedly not tinted as required, he sought further attention, and tinted eye-wear was again ordered for him. Finally, he acknowledges that he has since been provided with tinted eye-wear, and his sole remaining complaint appears to be that the tinting is not as dark as he wishes. He further asserts that physicians at LSP have apparently disagreed regarding whether his current tinted lenses may be re-tinted without ordering new glasses or whether darker lenses must be ordered. Notwithstanding, this complaint appears to be more a complaint regarding the adequacy of the medical treatment and services provided at LSP and not a claim arising under the ADA. Specifically, the plaintiff does not allege that he has been discriminated against at LSP "by reason of his disability," that he has been subjected to conditions at LSP, such as excessive exposure to sunlight, which have caused him injury or harm (as allegedly occurred at PCC), or that he has been excluded from participation in, or been denied the benefits of, any specific services, programs or activities at LSP, for which he is otherwise qualified. Nor does he allege that defendants LeBlanc or Foster bear any direct or personal responsibility for determining the appropriateness of his eye-wear at LSP or ensuring that such eye-wear is properly ordered and provided.

Based on the foregoing, the Court concludes that the plaintiff has failed to state a claim upon which relief may be granted under the ADA as to defendants LeBlanc and Foster. Specifically, there is no suggestion of discrimination against him at LSP *because* of his

disability.  Further, he acknowledges that he has been examined by eye specialists at LSP, that he has been determined to need tinted eye-wear in light of his medical condition, and that he has in fact been ordered and provided with tinted eye-wear.  To the extent that he asserts a claim regarding an alleged negligent failure to order the appropriate eye-wear or the purported inadequacy of the resulting eye-wear, this is a claim of mere deficient medical treatment which is not addressable under the ADA.  *See, e.g., Knowles v. Lewis*, 2014 WL 1117966, *11-12 (E.D. N.C. Mar. 20, 2014) (finding no ADA violation where a light-sensitive inmate plaintiff complained that prison medical officials had failed to accede to his alleged need to wear dark glasses indoors); *Threadgill v. Epps*, 2008 WL 553211, *6 (S.D. Miss. Feb. 27, 2008) (rejecting an ADA claim by a light-sensitive inmate who complained of the alleged failure of prison officials to provide him with specific "low vision aids" that he wanted, concluding that he had been provided with devices that were adequate and that he "merely disagrees with the treatment he has been provided").  It has also been found that when a "plaintiff's core complaint [is] incompetent treatment for his underlying medical condition, [s]uch a complaint does not state a claim for relief under the ADA because '[t]he ADA does not create a remedy for medical malpractice.'"  *Brown v. Wilson*, 2012 WL 6719464, *3 (N.D. Tex. Dec. 27, 2012), *quoting Moore v. Prison Health Services, Inc.*, 24 F.Supp.2d 1164, 1168 (D. Kan. 1998), *affirmed*, 201 F.3d 448 (10th Cir. 1999).  *See also Nottingham v. Richardson,* 499 Fed. Appx. 368, 377 (5th Cir. 2012) (finding that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners'"); *Hay v. Thaler,* 470 Fed. Appx. 411, 418 (5th Cir. 2012) (finding no ADA violation where the plaintiff complained that prison officials refused to provide him with dentures but where the plaintiff made no showing that the refusal was "by reason of his disabilities").  Further, the plaintiff in this case has not identified any specific

programs or services at LSP that have been denied to him because of his disability or because of the alleged failure to provide him with darker-tinted glasses. *See, e.g., Wilson v. Texas Department of Criminal Justice*, 2012 WL 4121130, *6 (E.D. Tex. Aug. 16, 2012) (denying a vision-limited inmate's ADA claim because certain accommodations had been provided so as to make programs and services available to him, and where "program accessibility" was noted to be the recognized touchstone of an ADA claim). *See also Moore v. Prison Health Services, Inc.*, *supra,* 201 F.3d at 448 (noting that the ADA "afford[s] disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities"). Thus, as in *Moore,* "the plaintiff in this action has stated no more than a claim which challenges the medical care provided for his medical condition ... [and] [h]e has not stated a claim for relief under the ADA because he does not complain he has been 'denied the benefit of the services, programs, or activities' of the prison system due to discrimination based upon his disability." 24 F.Supp.2d at 1168. For this reason, the plaintiff's claim for relief asserted under the ADA against defendants LeBlanc and Foster is without merit and should be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.

Finally, to the extent that the plaintiff's Complaint may be interpreted as seeking to invoke the supplemental jurisdiction of this court, district courts may decline the exercise of supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, considering the nature of the plaintiff's claims arising under federal law and the status of this

proceeding, the Court further recommends that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims.

## **RECOMMENDATION**

It is recommended that the Court decline supplemental jurisdiction in connection with the plaintiff's claims arising under state law. It is further recommended that the Motion to Dismiss of defendants James LeBlanc and Trish Foster (Rec. Doc. 8) be granted, dismissing the plaintiff's claims asserted against these defendants, with prejudice, and that this matter be referred back to the undersigned Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on June 5, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**