## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MARK E. WALKER (#550507)**                                  **CIVIL ACTION**

**VERSUS**

**JAMES LeBLANC, ET AL.**                                     **NO. 13-0553-JJB-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 30, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**MARK E. WALKER (#550507)**                                                    **CIVIL ACTION**

**VERSUS**

**JAMES LeBLANC, ET AL.**                                                        **NO. 13-0553-JJB-RLB**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the Motions to Dismiss of defendants Carol Gilcrease, Stephanie Lamartiniere, Roy Williams, Jedonne Johnson, John Crawford, Delaine Burgess, Janet Bruce and Delores Bluit (R. Docs. 77, 80 and 89).

The *pro se* plaintiff, an inmate previously incarcerated at Phelps Correctional Center ("PCC"), DeQuincy, Louisiana, and thereafter at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, against Department of Corrections Secretary James LeBlanc, LSP Legal Programs Director Trish Foster, and unidentified "John Doe" and "Jane Doe" prison officials previously employed at PCC, complaining that the defendants violated his constitutional rights through deliberate indifference to his serious medical needs, principally through a failure to provide him with tinted eyeglasses that he allegedly needed because of a congenital eye condition. Through the filing of an Amended Complaint, the plaintiff thereafter provided the identities of certain of the "John Doe" and "Jane Doe" defendants previously employed at PCC and added a claim against an additional LSP official, Grievance Officer

Stephanie Lamartiniere.[1]  Pursuant to a prior Magistrate Judge's Report in this case, approved by the District Judge on July 15, 2014, *see* R. Docs. 57 and 63, the Court has dismissed the plaintiff's claims asserted against defendants James LeBlanc and Trish Foster, with prejudice, and has declined the exercise of supplemental jurisdiction relative to the plaintiff's state law claims.

The remaining defendants now move to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under this Rule, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*,

---

1. Although the plaintiff's Amended Complaint identified Lynette Gill and George McGee as defendants herein, subsequent attempts to serve these persons at their last known addresses, which addresses were filed under seal by the Louisiana Department of Public Safety and Corrections, have proven unsuccessful. Specifically, the only address provided for defendant Gill was a post office box, *see* R. Doc. 73, and the United States Marshal's Office "need[s] a physical address for service," and the address provided for defendant McGee was insufficient because the defendant "doesn't live at [the] address" provided, *see* R. Doc. 87. Although an inmate plaintiff is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). In the instant case, the plaintiff obtained knowledge of non-service relative to the referenced defendants upon receipt of the Marshal's Service Returns, R. Docs. 73 and 87, that indicated that service had not been effected upon them at their last known addresses. Notwithstanding, the plaintiff has not since provided any additional information that might assist in effecting service and has not since taken any action to have them served. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 120 days of commencement of an action is justification for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Lynette Gill and George McGee be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon them.

*supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).[2]

---

2. In determining whether to grant a motion to dismiss, a district court generally considers only the allegations of the well-pleaded Complaint, as amended, and does not consider documentation "outside the complaint." *Scanlan v. Tex. A&M University*, 343 F.3d 533, 536 (5th Cir. 2003). When ruling on a motion to dismiss in a case filed by a *pro se* plaintiff, however, a district court may consider documents attached to the plaintiff's Complaint and those materials subsequently filed. *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). *See also Clark v. Huntleigh Corp.*, 119 Fed. Appx. 666, 667 (5th Cir. 2005) (finding that because of the plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments").

In his Complaint, as amended, the plaintiff alleges that he arrived at Phelps Correctional Center in April, 2012, and advised PCC medical officers at that time that he suffered with a severe congenital eye condition and was required to have appropriate eye-wear. On or about June 12, 2012, the plaintiff was escorted to a consultation with an eye specialist who prescribed "transitions" eyeglasses for the plaintiff and noted that such eye-wear was medically necessary for the plaintiff's condition. The plaintiff complains, however, that prison officials thereafter improperly modified the referenced prescription and failed to provide him with "transitions" eye-wear, allegedly because he was told that "Phelps policy did not allow for inmates to have tinted glasses." The plaintiff asserts, however, that tinted eye-wear was available for purchase from the Phelps commissary. The plaintiff further alleges that prison security officers assigned him to perform work in violation of his medical duty status and that, as a result, he was exposed to excessive sunlight and suffered permanent additional damage to his left eye resulting from the defendants' behavior. Finally, on or about September 12, 2012, the plaintiff filed an administrative grievance at PCC, complaining of the foregoing misconduct. According to the plaintiff, however, defendant Janet Bruce at Phelps did not provide a timely response to the grievance. The plaintiff complains that when his grievance was finally addressed by defendant Stephanie Lamartiniere at LSP in June, 2013, to which institution the plaintiff had been transferred, defendant Lamartiniere improperly denied the grievance at the First Step of the administrative process. According to the plaintiff, at the time of filing of his Complaint, he still had not been provided with appropriate tinted eye-wear, and he prayed for injunctive relief compelling prison officials to provide him with the requested eye-wear, as well as compensatory and punitive damages as a result of the defendants' alleged deliberate indifference to his serious medical needs.

Initially, the Court notes that although the plaintiff includes a claim for prospective injunctive relief in his Complaint, it appears from the record that in September, 2012, he was transferred from PCC to LSP, and he has now been transferred to his current place of confinement at the Rayburn Correctional Center in Angie, Louisiana. As a result, he is no longer subject to any alleged wrongful conduct by defendants named in this proceeding. Accordingly, his claim for prospective injunctive relief has been rendered moot by such transfer and is no longer properly before the Court. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (recognizing that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot"). The United States Court of Appeals for the Fifth Circuit has clearly and repeatedly held that a transfer renders moot any claims for injunctive relief with respect to an inmate's prior facility. *See, e.g., Kidd v. Livingston*, 463 Fed. Appx. 311, 314 (5th Cir.), *cert. denied*, __ U.S. __, 133 S.Ct. 36 (2012); *Stern v. Hinds County, Mississippi*, 436 Fed. Appx. 381, 382 (5th Cir. 2011); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Davis v. Wall*, 1995 WL 136204, *2 note 3 (5th Cir. Mar. 9, 1995). This aspect of the plaintiff's lawsuit, therefore, is subject to dismissal.

Turning to the plaintiff's claim for monetary damages asserted against the defendants, the Court next addresses the defendants' assertion that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's federal constitutional or statutory rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398, 399 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194, 200-01

(2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's federal constitutional or statutory rights. Second, the district court looks to "whether the defendants' conduct was objectively reasonable in light of 'clearly established' law at the time of the violation." *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999). This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *See Saucier v. Katz, supra*, 533 U.S. at 201.[3]

Applying the foregoing analysis, the Court first finds that the plaintiff's claim regarding a failure by defendants Janet Bruce, Delaine Burgess, Jedonne Johnson and Stephanie Lamartiniere to properly handle his administrative grievance is without merit.[4] As stated by the Court in previously recommending dismissal of similar claims asserted by the plaintiff against defendants Trish Foster and James LeBlanc, "the plaintiff's assertion that the defendants allegedly mishandled, improperly denied or failed to respond to his administrative grievance ... fails to state a meritorious claim inasmuch as an inmate plaintiff is not constitutionally entitled to an investigation into his administrative claims ... or to a fair or favorable response thereto. *See*

---

3. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). Although the *Saucier* methodology will be "often beneficial", the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

4. The plaintiff's Complaint, as amended, includes no specific allegations relative to defendants Delaine Burgess or Jedonne Johnson. However, in the Caption of the Complaint, the plaintiff identifies these defendants as being "ARP officer[s]" at PCC. *See* R. Doc. 52. Accordingly, the Court presumes that the plaintiff's claim asserted against these defendants relates to their alleged mishandling of his administrative grievance.

*Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate 'does not have a federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless')." *See* R. Doc. 57 at p. 9. For the same reason, the plaintiff's claim asserted against defendants Janet Bruce, Delaine Burgess, Jedonne Johnson and Stephanie Lamartiniere regarding the mishandling and/or denial of his administrative grievance should be dismissed.

Finally, the Court turns its attention to the plaintiff's remaining claim that defendants Dr. John Crawford, Commissary Officer Delores Bluit, Dpty Warden Roy Williams, Social Worker Carole Gilcrease and Dpty Warden Janet Bruce violated the plaintiff's constitutional and statutory rights by failing to provide him with medically necessary eye-wear at PCC and by assigning him to perform work that exceeded his medical duty status in light of his congenital eye condition. Inasmuch as all of these remaining defendants were employed only at PCC, the Court will limit its consideration of the plaintiff's claims to his period of confinement at that facility between April and September, 2012.

Undertaking the qualified immunity analysis, the Court concludes that the defendants' motions should be granted in part and denied in part. First, an inmate who seeks to assert a claim regarding inadequate medical care under § 1983 must be able to show that appropriate medical care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.

*Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994).  As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*.  Further, a mere delay in providing treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing principles, the Court finds that, with the exception of Delores Bluit, the plaintiff has alleged facts sufficient to warrant further factual development in connection with his claim that the referenced defendants exhibited deliberate indifference to his serious medical needs by failing to ensure that he was provided with appropriate eye-wear.  Specifically, the plaintiff has alleged that in June, 2012, a medical specialist evaluated the plaintiff and recommended that the plaintiff be provided with "med[ically] nec[essary]" "transitions" eye-wear, but the recommended eye-wear was not ordered for him by officials at PCC.  Instead, untinted eye-wear was ordered, and the plaintiff asserts that, when he complained, he was told that defendant Dr. John Crawford was the person who, without any examination, had made a contrary determination and would not allow the plaintiff to have tinted eye-wear.  The

plaintiff has provided a copy of documentation that is allegedly a purchase order for prescription eye-wear by PCC in 2012, *see* R. Doc. 20-1 at p. 4 and R. Doc. 20-2 at p. 1, but the Court has been unable to locate a legible copy of the referenced document in the record. The plaintiff also asserts that (1) he informed defendants Dr. Crawford, Janet Bruce, Roy Williams and Carole Gilcrease of his medical need for tinted eye-wear, (2) these defendants were therefore placed on notice of his medical need, and (3) they also purportedly undertook to investigate the situation and to remedy it if appropriate. Based on these factual allegations, the Court concludes that the plaintiff has sufficiently alleged, at this stage of the proceedings, a cause of action of deliberate medical indifference against these defendants, such that it is appropriate that a resolution of this claim be deferred pending the presentation of affidavits and/or documentary evidence addressed to this issue.

Notwithstanding the foregoing, the Court finds, in contrast, that the plaintiff has failed to allege sufficient personal involvement by defendant Delores Bluit in any violation of the plaintiff's constitutional rights. Specifically, the plaintiff has failed to allege sufficient connexity between the actions of this defendant and the alleged constitutional violations complained of. Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that this defendant was responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676, *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v.*

*Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith, supra,* 718 F.2d at 768.

In the instant case, the plaintiff has failed to allege that defendant Bluit had any actual personal involvement in providing the plaintiff with medical care at PCC or in determining his entitlement to medically necessary eye-wear. All that the plaintiff has alleged relative to this defendant is that she worked in the commissary at PCC and advised the plaintiff on one occasion that even if the plaintiff were able to afford tinted glasses offered for sale in the commissary and even if she were ordered to provide same by PCC medical personnel, she would not do so. This does not state a claim of a constitutional violation. Specifically, the plaintiff acknowledges that he was indigent and so was unable to offer to purchase the tinted commissary glasses. Further, the plaintiff does not assert that defendant Bluit ever in fact disregarded an order by PCC officials for the commissary to provide the plaintiff with tinted glasses. As such, the plaintiff only complains of a verbal statement or threat by defendant Bluit and does not complain of any actual wrongdoing by this defendant. This allegation regarding a mere verbal statement by defendant Bluit does not support a finding that this defendant personally engaged in any conduct that may have violated the plaintiff's constitutional rights. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (recognizing that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations"); *Burnette v. Phelps*, 621 F.

Supp. 1157, 1162 (M.D. La. 1985); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). Accordingly, this defendant is entitled to judgment as a matter of law in connection with the plaintiff's claim asserted against her.

Turning next to the plaintiff's claim that the defendants exercised deliberate indifference to his health or safety by compelling him to perform work in violation of his medical duty status, which duty status had been issued in light of his congenital eye condition, the Court finds that the plaintiff has failed to allege sufficient facts to overcome the defendants' assertion of qualified immunity. In this regard, prison work requirements may constitute an Eighth Amendment violation when prison officials knowingly compel an inmate to perform physical labor which is beyond his strength or which constitutes a danger to his health or safety, or which is unduly painful. *See Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *Willcoxson v. Thaler*, 2012 WL 5943384, *9 (S.D. Tex. Nov. 27, 2012). The test, again is one of "deliberate indifference," *i.e.,* whether the defendant prison official was aware of facts from which an inference could be drawn that the inmate's health was at risk and whether the official actually drew the inference that a serious potential for harm existed. *Willcoxson v. Thaler, supra*.

A review of documents attached to the plaintiff's pleadings reflects that he was issued a duty status at PCC that noted his vision problems and called for restrictions that were deemed appropriate for his conditions, including no participation in weight-lifting, football, basketball, baseball or volleyball, a bottom bunk assignment, and an assignment to a "sit down job," limited to the prison compound, with no exposure to "high places such as ladders or rooftops" and no exposure to "moving machinery such as tractors, etc." *See* R. Doc. 12-1 at p. 8. The plaintiff asserts, however, without any factual detail, that his duty status restrictions were violated at PCC. Notwithstanding, he has failed to allege, with any degree of specificity, in what manner

these restrictions were violated, when they were violated, or by whom they were violated. Specifically, the plaintiff provides no factual details regarding the work duties that were assigned to him to perform at PCC, and he makes no allegation whatever that any defendant named in this proceeding personally participated in violating the referenced duty status restrictions or was aware of a potential for harm. Accordingly, in the absence of any factual allegations regarding direct or personal wrongdoing by the defendants in compelling the plaintiff to perform work that was beyond his capabilities or was violative of his duty status, the Court is unable to conclude that the plaintiff has overcome the assertion of qualified immunity relative to this claim.[5]

Finally, although the plaintiff has attempted to assert a claim arising under the ADA, the Court finds that the plaintiff has failed to allege facts that state a cause of action under this statute. "The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "public entity" to include "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1)(B), and it has been held that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'" *Pennsylvania Dept. of*

---

5. The Court also notes that it does not appear that the plaintiff asserted a claim regarding the alleged violation of his duty status restrictions in the administrative grievance that he filed in September, 2012, relative to the claims asserted herein. It thus appears that this claim, likely, has not been administratively exhausted as mandated by 42 U.S.C. § 1997e.

*Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Thus, "the plain text of Title II of the ADA unambiguously extends to state prison inmates." *Id.* at 213. Notwithstanding, punitive damages may not be awarded in private suits brought under the ADA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), and "[a] plaintiff asserting a private cause of action for violation of the ADA ... may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle v. Victoria County, Texas, supra*, 302 F.3d at 574.

In order to establish a violation of the ADA, therefore, the plaintiff must be able to demonstrate (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997). The plaintiff's allegations in the instant case do not meet this 3-part test *vis-a-vis* the defendants. Specifically, the plaintiff acknowledges that upon transfer to PCC, he was provided with an appointment with an eye specialist who recommended tinted eye-wear as being medically necessary for his condition. Although the plaintiff complains that the wrong eye-wear was then ordered for him, he acknowledges that when the wrong eye-wear was received, he spoke to several persons at PCC who indicated that they would look into the problem and seek to obtain tinted eye-wear for him if it was in fact medically necessary. The plaintiff thereafter filed an administrative grievance in September, 2012, and he was admittedly transferred shortly thereafter to LSP where another consultation with an eye specialist was scheduled and where tinted eye-wear was admittedly ordered for him. Finally, the plaintiff acknowledges that he was thereafter provided with tinted eye-wear at LSP, although he has continued to complain that the

tinting was not as dark as he believed to be appropriate. These complaints appear to be more complaints regarding the adequacy of the medical treatment and services provided to the plaintiff and not claims arising under the ADA. Specifically, the plaintiff does not sufficiently factually allege that he was discriminated against at PCC "by reason of his disability" or that he was excluded from participation in or denied the benefits of any specific services, programs or activities at PCC for which he was otherwise qualified.

Based on the foregoing, the Court concludes that the plaintiff has failed to state a claim upon which relief may be granted under the ADA as to the defendants. Specifically, there is no suggestion of discrimination against him at PCC *because* of his disability. Further, to the extent that he asserts a claim regarding an alleged negligent failure to order the appropriate eye-wear or the purported inadequacy of the resulting eye-wear, this is a claim of mere deficient or negligent medical treatment that is not addressable under the ADA. *See, e.g., Knowles v. Lewis*, 2014 WL 1117966, *11-12 (E.D.N.C. Mar. 20, 2014) (finding no ADA violation where a light-sensitive inmate plaintiff complained that prison medical officials had failed to accede to his alleged need to wear dark glasses indoors); *Threadgill v. Epps*, 2008 WL 553211, *6 (S.D. Miss. Feb. 27, 2008) (rejecting an ADA claim by a light-sensitive inmate who complained of the alleged failure of prison officials to provide him with specific "low vision aids" that he wanted, concluding that he had been provided with devices that were adequate and that he "merely disagrees with the treatment he has been provided"). It has also been found that when a "plaintiff's core complaint [is] incompetent treatment for his underlying medical condition, [s]uch a complaint does not state a claim for relief under the ADA because '[t]he ADA does not create a remedy for medical malpractice.'" *Brown v. Wilson*, 2012 WL 6719464, *3 (N.D. Tex. Dec. 27, 2012), *quoting Moore v. Prison Health Services, Inc.*, 24 F. Supp. 2d 1164, 1168 (D. Kan. 1998), *affirmed*, 201

F.3d 448 (10th Cir. 1999). *See also Nottingham v. Richardson,* 499 Fed. Appx. 368, 377 (5th Cir. 2012) (finding that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners'"); *Hay v. Thaler,* 470 Fed. Appx. 411, 418 (5th Cir. 2012) (finding no ADA violation where the plaintiff complained that prison officials refused to provide him with dentures but where the plaintiff made no showing that the refusal was "by reason of his disabilities"). Further, the plaintiff in this case has not identified any specific programs or services at PCC that were denied to him because of his disability or because of the alleged failure to provide him with dark-tinted glasses. *See, e.g., Wilson v. Texas Department of Criminal Justice*, 2012 WL 4121130, *6 (E.D. Tex. Aug. 16, 2012) (denying a vision-limited inmate's ADA claim because "program accessibility" was noted to be the recognized touchstone of an ADA claim and because accommodations had been provided so as to make programs and services available to him). *See also Moore v. Prison Health Services, Inc.*, 201 F.3d 448 (5th Cir. 1999) (noting that the ADA "afford[s] disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities"). Thus, as found by the lower court in *Moore v. Prison Health Services, Inc.*, *supra,* "the plaintiff in this action has stated no more than a claim which challenges the medical care provided for his medical condition ... [and] [h]e has not stated a claim for relief under the ADA because he does not complain he has been 'denied the benefit of the services, programs, or activities' of the prison system due to discrimination based upon his disability." 24 F. Supp. 2d at 1168. For this reason, the plaintiff's claim for relief asserted under the ADA against the defendants is without merit and should be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.

**RECOMMENDATION**

It is recommended that the plaintiff's claims asserted against defendants Lynette Gill and George McGee be dismissed for failure of the plaintiff to serve these defendants within 120 days as mandated by Fed. R. Civ. P. 4(m). It is further recommended that the Motions to Dismiss of the remaining defendants (R. Docs. 77, 80 and 89) be granted in part, (1) dismissing the plaintiff's claims regarding the mishandling and denial of his administrative proceedings by defendants Delaine Burgess, Jedonne Johnson, Janet Bruce and Stephanie Lamartiniere, (2) dismissing all claims asserted against defendant Delores Bluit, and (3) dismissing the plaintiff's claims regarding the violation of his duty status restrictions and the Americans With Disabilities Act, with prejudice, and that this matter be referred back to the undersigned Magistrate Judge for further proceedings in connection with the plaintiff's Eighth Amendment claim of deliberate medical indifference in the provision of alleged inappropriate eye-wear at Phelps Correctional Center between April and September, 2012, asserted against defendants John Crawford, Roy Williams, Carole Gilcrease and Janet Bruce.

Signed in Baton Rouge, Louisiana, on January 30, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**